# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY GRAY, II,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **Civil Action No. 5:17-cv-01855-HNJ** |
| **v.** | ) | |
| | ) | |
| **MADISON COUNTY, ALABAMA,** | ) | |
| **MADISON COUNTY ALABAMA** | ) | |
| **COMMISSION,** | ) | |
| **DALE W. STRONG,** | ) | |
| **JERMIE HOWELL, PAM** | ) | |
| **FLORY,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

## I.      Introduction

1.      Plaintiff Gregory Gray ("Plaintiff" or "Gray") brings this lawsuit against Madison County and Madison County Commission ("County Defendants") for retaliation, a retaliatory hostile work environment.

2.      This lawsuit seeks legal and equitable relief to secure, protected, redress Gray's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 *et. seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. 1981a, 42 U.S.C. §1981(a) ("Title VII").

## II.      Jurisdiction

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4); 42 U.S.C. §2000e-5.

4.      The unlawful employment practices challenged in this action occurred in Madison County, Alabama therefore venue is proper pursuant to 28 U.S.C. §§1391(b) and 42 U.S.C.  §2000e-5.

5.      On September 9, 2016, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against County Defendants Madison County and Madison County, Alabama Commission as well as against Madison County Sherriff's Department. (Dkt. 1-1).

6.      On October 25, 2016, Plaintiff filed an amended Charge of Discrimination with the EEOC against the same entities. (Dkt. 1-2).

7.      On August 26, 2017, the EEOC issued Plaintiff two "right to sue" letters for both charges. (Dkt. 1-3 and Dkt. 1-4).

8.      On November 2, 2017 Plaintiff filed his first complaint in the United States District Court for the Northern District of Alabama, within ninety days of Gray receiving the right to sue letters. (Dkt. 1).

## III.     Parties

9.      Plaintiff Gray is a male citizen of the United States, over the age of nineteen (19) years and is a resident citizen of Madison County, Alabama.

10.    Defendant Madison County Commission is the governing body of Defendant Madison County ("County Defendant").

11.    County Defendant's personnel department is composed of the personnel director and a three member personal board. *See* Act 941.

12.    County Defendant is a "person" under Title VII.

13.    County Defendant employs the personnel director as part of the county's personnel department.

14.    Defendant Jermie Howell is a citizen of the United States and is a resident of Alabama.

15.    Howell was employed as the personnel director  ("Director Howell" or "Howell") of the Defendant County's personnel department at all times material to this action.

16.    Pam Flory is a citizen of the United States and is a resident of Alabama.

17.    Flory was employed as the deputy director of the Defendant County's personnel department at all times material to this action.

18.    Defendant County is an "employer" under Title VII as it employed fifteen or more employee and agents.

19.    Defendant County was and is Plaintiff Gray's "employer" under Title VII.

## IV.    Facts

20.    Since June 2003 Greg Gray has been in the service of Madison County Alabama and is presently a Deputy Sherriff.

3

21.     In 2016 Deputy Sheriff Gray ("Deputy Gray") was one of the most elite members of the Madison County SWAT Team, a specialized unit of just nine members.

22.     Deputy Sheriff Shelby Holt ("Deputy Holt") told Deputy Gray she was being sexually harassed by a male supervisor.

23.     Gray decided to assist Deputy Holt with making a formal complaint of sexual harassment.

24.     On or about July 25, 2016 Gray reported Deputy Holt's complaint of sexual harassment to Deputy Sherriff Cody Davis ("Deputy Davis").

25.     Then Gray reported to Sgt. Matt Cagle ("Sgt. Cagle") that Deputy Sheriff Shelby Holt ("Deputy Holt") complained that she was being sexually harassed at work by a Sgt. Rutherford male superior.

26.     Gray relayed Deputy Holt's complaints about Sgt. Rutherford following her and making comments like "your ass looks good."

27.     Gray encouraged Holt speak with Sgt. Cagle about Sgt. Rutherford's sexually harassing comments.

28.     On August 7, 2016, Deputy Holt reported Sgt. Rutherford's sexual harassment to Sgt. Jones, her immediate supervisor.

29.     Sgt. Jones told Deputy Holt to report it to the Human Resources office.

30.     Sgt. Jones told Deputy Holt he was going to relay her report of sexual discrimination to Lt. Brian Hughes.

4

31.    On August 10, 2016, Deputy Holt reported Sgt. Rutherford's sexual discrimination in writing.

32.    Madison County Personnel Board Director Jermie Howell received Deputy Holt's written complaint of sexual discrimination.

33.    Madison County Deputy Director Pam Flory received Deputy Holt's written complaint of sexual discrimination.

34.    Sherriff Dorning received Deputy Holt's written complaint of sexual discrimination.

35.    Madison County attorney Jeff Rich received Deputy Holt's written complaint of sexual discrimination.

36.    On August 10, 2016, Deputy Holt filed a charge of discrimination with the United States Equal Employment Opportunity Commission alleging sexual discrimination.

37.    On August 11, 2016, personnel director Howell and Chief Deputy Sherriff Jernigan met with Deputy Sheriff Holt.

38.    Madison County Commission Chairman Strong did not attend the August 11, 2016 meeting with Deputy Sheriff Holt.

39.    On August 13, 2016 Gray and Holt were off-duty and at Gray's home.

40.    Holt was worried about work since she had filed her complaint of sexual harassment.

41.     Gray made a phone call to speak with Sgt. Jones and when they spoke he asked that Sgt. Jones come to his house.

42.     Sgt. Jones and Sgt. Elliff arrived at Gray's home.

43.     After Sergeants Jones and Elliff arrived, Sgt. Elliff stayed with Gray inside the residence and Sgt. Jones went outside to speak with Holt.

44.     Gray told Sgt. Elliff Holt "a lot of other things too, emotionally wise and stress" due to a situation and that there was another issue, and Gray asked Sgt. Elliff to deactivate his bodycam.

45.     According to Sgt. Elliff he deactivated his bodycam because Gray wanted to discuss a departmental issue.

46.     Gray told Sgt. Elliff that Jones already knows what's going on. Both of us are stressed out. You know her deal with Rutherford. She's never been at trouble at work or had to report anything or be under investigation.

47.     Gray told Sgt. Elliff Shelby has had an issue with Sgt. Rutherford. Sgt. Eliff said he was aware. Gray told Sgt. Elliff that Sgt. Jones already knows because she went to him. Gray told Sgt. Eliff that he was trying to help Shelby get through it.

48.     In an initial narrative dated August 15, 2016, Sgt. Elliff reported,

> While inside the residence with Deputy Gray he made a statement that Deputy Holt was **under a lot of stress at work due to a 'situation'** and that there was also another issue. Deputy Gray requested that I **deactivate my body camera so he could discuss these issues** . . . After I deactivation the only thing Deputy Gray revealed was that Deputy Holt was under a lot of stress due to a 'situation' at work and that she possibly had a 'medical condition.'

6

49.     On August 22, 2016, Sheriff Sergeants Cross and Whisante informed Plaintiff Gray that he was being placed on administrative leave, that there was a pending investigation, and they were there to retrieve Madison County property.

50.     Neither Sgt. Cross nor Sgt. Whisante provided Plaintiff Gray with an explanation for why Gray was being placed on administrative leave and being investigated, even when specifically asked by Plaintiff Gray.

51.     Gray was not provided a verbal or explanation as to the basis for administrative leave or investigation until sometime after August 22, 2016.

52.     On August 23, 2016 Chief Deputy Jernigan assigned Sgt. David Moody to investigate whether Gray's off-duty comments regarding Sgt. Whisante violated Madison County Sherriff's Department Policy.

53.     On August 25, 2016, Sheriff Sgt. David Moody called Gray and informed Gray he was being investigated for being disrespectful toward a supervisor.

54.     On or about August 25, 2016, that Plaintiff submitted in writing that he believed the investigation was in **direct retaliation due to Shelby Holts harassment claim** on Sergeant Rutherford and the Madison Sherriff's office." (emphasis added).

55.     Moody submitted a written report of the incident to Chief Jernigan cited **Madison County Handbook Primary Offence 105.**

56.     In an witness statement dated August 28, 2016 Sgt. Elliff wrote

Deputy Gray stated that he didn't know what was wrong with Deputy Holt other than she had "a situation going on at work" and she had other problems as well . . . Deputy requested that I cut my camera off because he needed tell me about **Deputy Holts personal (sic) situation**. At this time Deputy Gray stated that **Deputy Holt was going through a lot of stuff at work** and he ask[ed] if I knew what he was talking about and I did not. Deputy Gray then stated that in addition to the situation at work Deputy Holt also thought she was pregnant, and she was extremely emotional.

(emphasis added)

57.     On August 30, 2016, Gray was given notice of a pre-disciplinary Hearing scheduled for September 6, 2016 it stated:

It appears your conduct on August 13, 2016 constitutes on or more primary offenses under Section 6.5 of **the Madison County (MC) Rules, Policies, and Procedures Handbook**. Primary offences are those offenses where disciplinary action for the first offense may include suspension or termination. You are also in violation of the MCSO Rules, Policies, and procedures Manual.

### ***Madison County Commission Employee*** *Handbook*

6.5 Employees Conduct and Disciplinary Handbook #105 Disrespectful conduct toward an official, supervisor, Department Head, co-workers, or the public, whether verbally or in action**.**

(bold added).

58.     Sherriff Blake Dorning and Chief Deputy David Jernigan met with Gray on or about September 6, 2016.

59.     During a second meeting on September 6, 2016, in the afternoon, Chief Deputy Jernigan stated Chief Dorning stated he was unhappy with Gray, Gray was

on "a self-destructive path," that Gray "did not have good judgment," that Gray could not "get along with others."

60.    On September 6, 2016, Gray was given a written warning for a "conduct" and "attitude" violations stating Gray had received his first warning on May 2, 2007, second warning August 6, 2010, and a third warning on July 7, 2015.

61.    Chief Deputy Jernigan informed it been decided to:

     a.  Suspend Gray for eight (8) days;

     b.  Indefinitely remove Gray from SWAT team, effective immediately;

     c.  Require Gray attend and complete counseling;

     d.  Reassigned to patrol duty; and

     e.  Prohibited from wearing SWAT uniforms.

62.    The Sherriff's department no longer permitted Gray to drive the vehicle he was provided prior to his complaint.

63.    Gray was also reassigned and required to report directly to Sergeant Whisante.

64.    Plaintiff Grays removal from the SWAT team is a daily reminder to him and his co-workers that he is viewed as a trouble-maker for opposing gender discrimination.

65.    Gray attended and completed counseling.

66.    Gray is assigned to patrol duty.

67.    Gray is not allowed to wear SWAT uniforms.

68.   Gray was required to purchase new patrol uniforms.

69.   Gray was not reimbursed for the cost of his patrol uniforms by the Sheriff's Department.

70.   From September 6, 2016 and continuing through today the Sherriff's department has not returned Gray to the SWAT team.

71.   From September 6, 2016 and continuing through today the Plaintiff Gray remains suspended from the SWAT team.

72.   From September 6, 2016 and continuing through today Plaintiff Gray is no longer eligible to attend trainings and other SWAT events.

73.   From September 6, 2016, Gray has lost the opportunity to additional pay associated with attending SWAT training and other events members of SWAT received.

74.   At the time of Gray's removal from the SWAT team he satisfied the minimum requirements for the team.

75.   Gray has not been reinstated to the SWAT team.

76.   Alabama Legislature Act No. 941 relates to Madison County, creating and establishing a county-wide personnel system providing for a personnel department to be composed of personnel board and personnel director (hereinafter "Personnel Department").

77.   The Personnel Department governs and control all employees and appointees holding positions in the Classified Service.

78.   Section 4 of Act 941 applies to all officers and employees in the service of [Madison] county, including all employees of the County Sheriff.

79.   Section 6 of Act 941 requires that Personnel Board formulate and adopt rules establishing the specific procedures to govern the following phases of the personnel program:

a.   The preparation, installation, revision, and maintenance of a position classification plan covering all positions in the classified service;

b.   The formulation of minimum standards and qualification for each class of position;

c.   The evaluation of employees during the probation period;

d.   The separation from the service of employees through, layoff, suspension, dismissal, and for incapacity to perform required duties;

e.   Maintenance and use of necessary records and forms.

80.   Section 10 of Act 941 states: No employee in the Classified Service may be demoted or dismissed or reduced in pay without just cause;

Any employee in the Classified Service who has been demoted, dismissed, or reduced in pay shall be entitled to receive a written statement of the reasons for such action from the appointing authority within three working days, and he shall have three working days time thereafter within which to file an answer thereto. A copy of such charges and answer shall be filed with the Personnel Director. In the event the employee files an answer, a copy of the written charges and of such answer shall be transmitted by the Personnel Director to the Personnel Board. Within ten working days from the date of the filing of his answer to the written charges, or in the event such written charges have not been made available to him within the time

prescribed, then within ten working days after action taked to demote, dismiss or deduce the pay of the employee, he may file a written demand with the Personnel Director, requesting a hearing before the Personnel Board. The Board shall then investigate the case and conduct a hearing as provided by this Act and by the rules.

81.   The Madison County personnel board adopted the Madison County

Employee Handbook on or around June 11, 2015.

82.   Section 1.6 of the Madison County Employee Handbook provides that

employees are expected to follow the rules of their respective department as well

as the Madison County Rules, Policies, and Procedures. If a conflict arises

between departmental policy and these rules, Madison County Handbook's rules

prevail.

83.   The Sheriff's Department adopted the Madison County Employee

Handbook.

84.   Section 2.7 of the Madison County Employee Handbook titled "Equal

Employment Opportunity" states the personnel director is the EEO Officer for

Madison County Employees and that "any employee with questions concerns

about any type of discrimination in the workplace is encouraged to bring these

issues to the attention of their immediate Department Head or the Personnel

Director. Employees can raise concerns and make reports without fear of

reprisal."

85.   Section 2.9 of the Madison County Employee Handbook titled "Harassment

Policy" states that Madison County is committed to providing a work environment

that is free from all forms of discrimination and conduct that can be considered harassing, coercive, or disruptive, including sexual harassment."

86.   Section 2.9 of the Madison County Employee Handbook applies to all employees in the Sherriff's Department, including Deputy Sheriffs.

87.   The Madison County Employee Handbook's harassment policy instructs those who believe they are being sexually harassed or are aware of behavior that may violate the policy should report it to one of the following individuals:

   a.   Personnel Director, Jermie Howell;

   b.   Deputy Personnel Director, Pam Flory;

   c.   County Administrator, Kevin Jones;

   d.   Or if an individual feels they cannot talk with the above then report to Madison County Commission Chairman Dale Strong.

88.   The Defendant County received numerous internal complaints by female Sheriff Deputies claiming they were sexually harassed, subject to sexual discrimination in 2016.

89.   The following female Sheriff Deputies filed charges of discrimination with the United States Equal Employment Opportunity Commission including claims of retaliation:

   a.   Erica Cagle filed a charge of discrimination on August 9, 2016

   b.   Shelby Holt filed a charge of discrimination on August 10, 2016

    c.  Maria Garcia filed a charge of discrimination on March 28, 2016 and

        April 27, 2016

90.   Pursuant to Defendant County's personnel policies, practices and procedures

reporting sexual discrimination harassment to other employees, including

supervisors is considered protected activity, and were to be protected from reprisal

91.   Defendant County claims its policy and custom is to investigate any

complaints of sexual harassment, sexual discrimination, retaliation, and retaliatory

conduct thoroughly.

92.   Defendant County's Employee Handbook states that "[a]ny supervisor or

Department Head who becomes aware of possible or sexual or other unlawful

harassment ***must immediately*** advise the County Administrator or Personnel

Director so it can be investigated in a timely and confidential manner. Any

supervisors who fails to make notification when harassment is observed or who is

aware of the possibility of harassment and fails to make notification, will be

subject to disciplinary action.

93.   Defendant County's Employee Handbook states that "[w]hen the

investigation is completed, you will be informed of the outcome of the

investigation."

94.   Defendant County's claim its personnel policies, procedures, and customs

establish zero tolerance for sexual harassment, sexual discrimination, retaliation,

and retaliatory conduct.

95.    Pursuant to the personnel policies, practices and procedures any action that would dissuade a reasonable worker from making or supporting a charge of discrimination is considered an adverse employment action that violates the anti-retaliation provision of Title VII.

96.    Section 6.5 of the Madison County Handbook titled "Employee Conduct and Disciplinary Procedures" states that there is a progressive disciplinary process consisting of: (1) verbal counseling; (2) written warning; (3) suspension without pay; or (4) termination.

97.    Section 6.5 goes on to say that "Appointing authorities should consult with the Personnel Department before skipping steps in progression."

98.    Complainant filed a charge of discrimination with the United States Equal Employment Opportunity Commission on September 9, 2016, alleging retaliation.

99.    On September 13, 2016, Gray submitted a letter to Sheriff Dorning renewing his report/complaint that he felt the adverse employment actions taken against him were a "direct retaliation due to Shelby Holts, harassment claim on Sergeant Rutherford and the Madison County Sheriff office." (underlining added).

100.  Deputy Holt was terminated on September 30, 2016.

101.  On October 5, 2016 Plaintiff Gray was informed that he was being reassigned to directly report Sgt. Whisante.

102.  Additionally, Plaintiff Gray learned that Sgt. Whisante would be giving him monthly evaluations for the next three months, in addition to the annual evaluation.[1]

103.  On October 25, 2016, Gray submitted a charge of discrimination with United States Equal Employment Opportunity Commission alleging retaliation.

104.  On November 3, 2016, counsel submitted a position statement to the Equal Employment Opportunity Commission stating, that information submitted to the EEOC that relates to a date more than six months before the charge was filed were being provided solely as background information.[2]

105.  The position statement to the EEOC states "[d]uring the investigatory encounter (which as captured on the body-worn cameras of bother Sgt. Jones and Sgt. Elliff), Gray did not disclose the basis of the argument other than to say it was stupid."

106.  The position statement to the EEOC did not inform the EEOC investigator that Plaintiff Gray requested the bodycam be turned off, that the bodycam was turned off, and that the body cam did not record the entire conversation between the on duty sergeant and Plaintiff Gray, who was off-duty.

---

[1] In Sgt. Whisante August24, 2016 witness statement wrote "I advised Sgt. Jones that I would respond if needed, but I felt due to history between myself and Dep. Gray it would probably best if I didn't respond." Dep. Gray had previously complained to his Lieutenant about Sgt. Whisante demeaning treatment of him and they had a sit-down meeting.

[2] Gray was issued a written warning that listed 1st warning: May 2, 2007; 2nd warning August 6, 2010; and July , 2015.

107.  While the body cam Plaintiff Gray discussed Holt's complaint of sexual discrimination with the on-duty sergeant.

108.  The position statement to the EEOC does not make any mention of the off-camera and unrecorded conversation.

109.  Defendant County's EEOC position statement to the EEOC failed to disclose that Gray's written statement during the investigation stated he believed the investigation was "in direct retaliation due to Holts harassment claim on Sgt. Rutherford and the Madison Sheriff's department."

## V.    Causes of Action

### COUNT I: Title VII Claim of Retaliation
### Against Defendant Madison County, Alabama and
### Madison County Commission

110.   Plaintiff brings a claims of retaliation against Defendant County as his employer under Title VII.

111.   Defendant County co-determined the essential terms and conditions of Gray's employment, so to be found as a joint employer with Madison County Sherriff.

112.   Defendant County and Madison County Sherriff's department were highly integrated to be considered a single employer.

113.   Maintaining nominal separate identities Defendant County and Madison County Sherriff's department has allowed permits the entities to evade the reach of federal employment discrimination laws.

114.   The Alabama Legislature enacted Alabama Act No. 941 expressly delegating authority to Madison County to create and establish "a county-wide personnel system; providing for a personnel department to be composed of a Personnel Board and Personnel Director."

115.   In Section 1 of Act No. 941 the Legislature of Alabama expressly created and established "a personnel department for the government and <u>control of all employees and appointees</u> holding positions in the Classified Service, as defined in Section 4."

116.   In Section 4 of Act No. 941 the Legislature of Alabama expressly states, "this Act shall apply to the following officers and employees in the service of the county . . . All employees of the County Sheriff."

117.   In Section 6 of Act. No. 941 the Legislature of Alabama expressly delegated to the personnel department: (a) the preparation, installation, revision, and maintenance of a position classification plan covering all positions in the classified service; (b) the formulation of minimum standards and qualifications for each class of position; (c) the evaluation of employees during the probation period; (d) the separation from the service of employees through layoff, suspension, dismissal, and or incapacity to perform required duties; the maintenance and use of necessary records and forms."

118.   In Section 10 of Act. No. 941 the Legislature of Alabama expressly established that no employee in the Classified Service may be demoted or dismissed or reduced in pay without just cause."

119.   Employees of the Sheriff Madison County are covered under the Classified Service under the provisions of Amendment Number 694 of the Alabama Constitution of 1901.

120.   Amendment 694 provides, "Effective the first day of the sixth month after ratification of this amendment, employees of the Office of Madison County, except for the chief deputy, shall be under the authority of the Personnel Board of Madison County." (emphasis added).

121.   The Defendant County's personnel department promulgated the Madison County Employee Handbook that contains the rules, policies, and procedures regarding employment with Madison County or the Madison County Commission.

122.   The Defendant County's personnel department promulgated the rules, policies, and procedures governing hiring, transfers, promotions, disciplines or discharge of employees.

123.   The Defendant County's personnel department promulgated the rules, policies, and procedures governing the disciplinary process for conduct and work performance.

124.   Defendant County's personnel department promulgated the appeal process for Madison County full-time non-probationary employees have the right to appeal

the following actions to the Madison County Personnel Board: (1) A suspension without pay that exceeds (30) days in any fiscal year; (2) a demotion or reduction in pay; (3) termination of employment.

125.   Defendant County's employee handbook was adopted by County Sheriff Manual adopted in 2016.

126.   County Defendant controlled the essential terms and conditions of Gray's employment outside the law enforcement policies and procedures.

127.   County Defendant's handbook subsection 1.6 states "[i]f a conflict arises between departmental policy and these rules, Madison County Handbook's rules prevail."

128.   Plaintiff Gray engaged in protected activity by verbally reporting the sexual discrimination to supervisors, by expressing his opposition to sexual discrimination, by reporting reprisal verbally and in writing.

129.   Plaintiff Gray suffered adverse employment actions after reporting the sexual discrimination and expressing his opposition to sexual harassment.

130.   Plaintiff Gray engaged in protected activity assisting Deputy Holt making internal complaints of sexual harassment.

131.   Plaintiff Gray engaged in protected activity when he made internal reports regarding his opposition to the sexual harassment.

132.   Plaintiff Gray engaged in protected activity when he filed charges of discrimination with United States Equal Employment Opportunity Commission.

133.   Plaintiff Gray engaged in protected activity when he made internal reports regarding Deputy Holt regarding retaliation.

134.   Plaintiff Gray submitted a written complaint of retaliation and that was submitted to the Personnel Director and Personnel Board, placing Defendant Madison County on notice of his protected activity.

135.   Defendants subjected Gray to adverse employment actions, including but are not limited to:

    a.  placing Gray on administrative leave;

    b.  subjecting him to heightened scrutiny;

    c.  suspending his employment;

    d.  removing Gray from his SWAT position indefinitely;

    e.  deviating from employers' disciplinary policies;

    f.  requiring completion of counseling;

    g.  prohibiting from wearing SWAT clothing;

    h.  assigning him to patrol duty;

    i.  imposing the costs of patrol uniforms (without reimbursement);

    j.  denying opportunity training; and

    k.  denying opportunity for additional pay.

136.   Gray was placed under the immediate supervision of Sgt. Whisant, a supervisor Gray had reported mistreated him.

137.   Gray was subjected to monthly evaluations to be completed by Sgt. Whisant for three months.

138.   Defendant County ratified and adopted the adverse employment actions.

139.   Gray has suffered harm including economic loss, loss of prestige, loss of employment opportunities, as well as causing him emotional and mental harm.

140.   Defendant County's indefinite removal from the exclusive, prestigious and competitive SWAT team after eleven (11) years of dedicated service caused special irreparable harm intended to chill other employees from opposing and participating in similar protected activity.

141.   Gray was treated less favorably than similarly situated employees who had not engaged in protected activity but committed similar or worse offenses without any or lesser punishment.

142.   Plaintiff Gray's protected activity and the adverse employment actions were not wholly unrelated as County Defendant's employees and agents were aware of his protected activities at the time of the adverse employment actions.

143.   The temporal proximity between Gray's protected activities and the adverse employment actions supports a causal connection.

144.   Defendant County ratified adverse employment actions imposed after notice deviations of standard procedures of delivering written notice prior to placing Gray on involuntary leave.

145.   Defendant County ratified the use of temporally remote "disciplines" to support the adverse employment actions.

146.   County Defendant's putative business justification for ratifying and adopting adverse employment decisions is fatally infected with inconsistencies, incoherencies or contradictions render it unworthy of credence.

147.   Defendant County's proffered reasoning for omissions is merely pretext to mask ratification and adoption of unlawful retaliatory actions.

## COUNT II:
### Title VII Claim of Retaliatory Hostile Work Environment Against Defendant Madison County, Alabama and Madison County Commission

148.   Plaintiff brings a claims of retaliation against Defendant County as his employer under Title VII.

149.   Defendant County co-determined the essential terms and conditions of Gray's employment, so to be found as a joint employer with Madison County Sherriff.

150.   Defendant County and Madison County Sherriff's department were highly integrated to be considered a single employer.

151.   Maintaining nominal separate identities Defendant County and Madison County Sherriff's department has allowed permits the entities to evade the reach of federal employment discrimination laws.

152.   Title VII prohibits subjecting those who have engaged in protected activity to a retaliatory hostile work environment.

153.   Other allegations of conduct violating Title VII, including retaliation and retaliatory hostile work environment occurred close in time, were made by similarly situated employees, and suffered similar adverse employments similar for reasons similar to those used to support the adverse employment actions taken against Gray, by common decisionmakers, without an action by Defendant County's employees responsible for protecting employees against retaliation is ample evidence of a pattern and practice violative of Title VII.

154.   Defendant County knew or should have known of the retaliation and retaliatory hostile environment suffered by employees it was expressly responsible to protect under federal employment law.

155.   Defendant County failed to take immediate and appropriate corrective action.

156.   Defendant County failed to act in a reasonably prompt manner in response to employee reports of rampant discrimination and retaliation.

157.    Defendant County failed to take reasonable remedial measures to prevent the discrimination, its continuation, and retaliation.

158.   Defendant County ratified and adopted the biased recommendation without independently investigating the complaint against the employee.

159.    Defendant County ratified and adopted Gray's removal from the SWAT team being called an indefinite suspension instead of a demotion.

160.    Defendant County ratified and adopted Gray's indefinite removal.

161.    The suffers a continuing harm because each time SWAT team members receive training, receive additional pay, and otherwise show their exclusivity Gray is being denied the privileges and benefits of employment he would have enjoyed but for his engaging in protected activities.

162.    Gray has suffered a variety of professional reprisals including but not limited to improper placement on administrative leave, suspension, imposition of uniform costs (without reimbursement), reassignment, and unwarranted scrutiny and isolation.

163.    Gray is in constant fear of further retaliation from supervisors and co-workers.

164.    Gray is aware that other employees who engaged in protected activity were subjected to other adverse employment actions, including termination.

165.    The totality of the circumstances including hostility towards similarly situated employees who have engaged in similar protected activity have the cumulative effect of a retaliatory hostile work environment.

166.    The unlawful retaliatory adverse employment actions taken against Gray have been ratified, confirmed, and affirmed by County Defendant even after learning of Gray engaging in protected activity.

25

167. County Defendant's actions and omissions were done with malice and/or reckless disregard and/or deliberate indifference to Deputy Gray's federally protected rights and intended punish Gray for assisting Deputy Holt's filing her sexual discrimination claims and his own participation in protected activity.

168. Defendant County has a policy or custom of permitting retaliation against employees who have engaged in protected activity.

169. Defendant County negligently trains and supervises its employees responsible for protecting other employees against retaliation for engaging in protected activity.

170. Defendant County fails or refuse to properly train or supervise its employees responsible for protecting other employees against retaliation for engaging in protected activity.

171. Defendant County's negligence, failure, or refusal to properly train or supervise its employees in the Madison County Sherriff's department and personnel department has allowed retaliation and retaliatory hostile work environment to flourish.

172. There is a persistent and widespread practice of retaliating against those who engage in protected activity and continuing to subject those who remained employed to a retaliatory hostile work environment.

173. County Defendant knew their actions and omissions violated Gray's rights in the performance of his official responsibilities.

174.   The unlawful retaliatory hostile work environment has been ratified, confirmed, and affirmed by County Defendant even after it knew of or should have known Gray and similarly situated employees were subjected to adverse employment actions shortly after engaging in reported activity.

175.   County Defendant are liable under Title VII because of actions and omissions permitting a pattern of practice of retaliation were done with malice and/or reckless disregard and/or deliberate indifference to Deputy Gray's federally protected rights.

176.   County Defendant ratified and adopted a retaliatory hostile work environment by failing to take any remedial action

177.   It became the official policy, through custom, of the County Defendant to take no action to remedy a retaliatory hostile work environment.

178.   County Defendant acted with malice and/or reckless disregard and/or deliberate indifference to Deputy Grays federally protected rights.

179.   Deputy Gray suffered damages and continues to suffer damages as a proximate result, which were caused by governmental policy and/or custom with deliberate indifference to Gray's rights and/or deliberate indifference to those violations.

180.   Plaintiff has a property interest related to his career.

181.   A reasonable official/person in his respective position would have known, or should have known their failure to safeguard policies and practices from deviation or disparate application violated Gray's constitutional rights.

182.   Individual Defendants knew or should have know that they were relying on biased findings and did not conduct or direct an independent investigation to be conducted.

183.   Individual Defendants knew or should have known that the proposed punishment did not fit the claimed violation, and harmed Gray's constitutional and federally protected rights.

### VI.   Prayer of Relief

WHEREFORE, Plaintiff Gray respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Enter all necessary injunctive relief necessary, including but not limited to a permanent injunction enjoining the Defendant County their agents, successors, employees, attorneys and those acting in concert with them and at their request from continuing to violate Title VII and/or the equal protection of the laws, the Fourteenth Amendment.

B. Ordering Defendant County employee to participate in semi-annual discrimination workshops;

C. Enter an order requiring the Defendant County to make Plaintiff Gray whole by awarding him reinstatement into the position he would have occupied in the

absence of retaliation, removing disciplines from Gray's personnel file and prevent their use in any further disciplinary action, with the same seniority, leave and other benefits (or front pay), and back pay (with interest), and by awarding Deputy Gray compensatory damages for emotional distress, punitive damages, and/or nominal damages;

D. By awarding Deputy Gray compensatory damages for emotional distress, punitive damages, and/or nominal damages against all of the Defendants on all issues and claims which allow such damages;

E. Where issues and damages are triable by a jury, Deputy Gray leaves  to the discretion of the jury the amount of compensatory and the amount of punitive damages to be awarded to him;

F. Deputy Gray further prays for such other relief and benefits as the law allows and provides for and the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses.

**DATED:** February 20, 2019,

Respectfully Submitted,

/s/ Daniel E. Arciniegas

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2019 a true and correct copy of the above and foregoing document, *Plaintiff's Third Amended Complaint* has been properly served via the Court's CM/ECF system, which sent electronic notice to the following counsel of record.

George W. Royer, Jr.
David J. Canupp
LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue, Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: gwr@lfsp.com & djc@lfsp.com


L. Franklin Corley, IV
Fcorley@sirote.com
Sirote & Permutt, P.C.
305 Church Street, Ste. 800
Huntsville, AL 35801
Phone: 256-536-1711
Fax: 256-518-3681
E-Mail: fcorley@sirote.com


/s/ Daniel E. Arciniegas

Daniel Eduardo Arciniegas
Daniel@AttorneyDaniel.com
**ARCINIEGAS LAW, PLLC**
501 Union Street,  Suite 430
Nashville, Tennessee 37219
t. 629.777.5339
f. 615.988.9113
*Counsel For Plaintiff*